

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAIME SABATER,

                        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

Case No. 12-CV-4594 (KMK) (JCM)

<u>ORDER ADOPTING R&R</u>

KENNETH M. KARAS, District Judge:

      Jaime Sabater ("Plaintiff") brings this action against the Commissioner of Social Security ("Commissioner" or "Defendant"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge ("ALJ") to deny Plaintiff's application for disability insurance benefits on the grounds that Plaintiff is not disabled.[1] Plaintiff moves to reverse the Commissioner's decision and remand solely for the calculation of disability benefits or, in the alternative, vacate such decision and remand for further consideration by the Commissioner, pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 10.) Plaintiff also moves for attorney's fees and costs pursuant to 28 U.S.C. § 2412(d) (collectively, "Plaintiff's Motions"). (*Id.*) Defendant cross-moves for judgment on the pleadings to affirm the Commissioner's decision pursuant to Rule 12(c) ("Defendant's Cross-Motion"). (Dkt. No. 15.) The Court referred the case to Magistrate Judge Judith C. McCarthy ("Judge McCarthy") pursuant to 28 U.S.C. § 636(b)(1)(A). Judge McCarthy issued a Report and Recommendation ("R&R"),

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin, the current Acting Commissioner of Social Security, has been substituted as Defendant in this Action.

recommending that the Court deny Plaintiff's Motions and grant Defendant's Cross-Motion. (Dkt. No. 24.) Plaintiff timely filed objections to the R&R on May 22, 2015, (Dkt. No. 25), which the Court considers here. For the reasons discussed below, the Court adopts the R&R in its entirety.

I. Discussion

A. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-7300, 2015 WL 1069307, at *1 (S.D.N.Y. Mar. 11, 2015) (same). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Bradley*, 2015 WL 1069307, at *1. Further, the district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *see also Alverio v. Colvin*, No. 13-CV-4722, 2015 WL 1062411, at *1 (S.D.N.Y. Mar. 9, 2015) ("When the parties make no objections to the [r]eport [and

recommendation], the [c]ourt may adopt [it] if there is no clear error on the face of the record." (internal quotation marks omitted)).

Regarding the merits of a Social Security claim, the reviewing court's function is not to determine whether the plaintiff is disabled, and therefore entitled to Social Security benefits. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("[I]t is not our function to determine de novo whether [the] plaintiff is disabled." (alterations, italics, and internal quotation marks omitted)); *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 502 (S.D.N.Y. 2014) ("[U]ltimately, it is not the [c]ourt's function to determine de novo whether [the] [p]laintiff is disabled." (alterations, italics, and internal quotation marks omitted)); *Van Dien v. Barnhart*, No. 04-CV-7259, 2006 WL 785281, at *8 (S.D.N.Y. Mar. 24, 2006) ("The court is not permitted to determine whether the claimant is disabled de novo." (italics omitted)). Instead, the reviewing court determines only "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g in part by*, 416 F.3d 101 (2d Cir. 2005); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d. Cir. 1999) (noting that a court will only overturn the determination of an ALJ if it is "based upon legal error" or "not supported by substantial evidence" (internal quotation marks omitted)); *Vazquez ex rel. J.V. v. Colvin*, No. 13-CV-6372, 2015 WL 1241251, at *16 (W.D.N.Y. Mar. 18, 2015) (noting that a district "[c]ourt's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards").

To determine whether a claimant is entitled to disability benefits, the ALJ must follow a five-step sequential analysis. *See Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (outlining the five steps); 20 C.F.R. § 404.1520(a)(1). First, the ALJ determines whether the claimant is

currently engaged in substantial gainful work. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Rolon*, 994 F. Supp. 2d at 501; 20 C.F.R. §§ 404.1520(a)(4)(i), (b). Second, if the claimant is not so engaged, the ALJ considers whether the claimant has a severe impairment that limits his or her ability to participate in work-related activities. *See McIntyre*, 758 F.3d at 150; *Rolon*, 994 F. Supp. 2d at 501; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). Third, if so, the ALJ determines whether the impairment is listed, or equal to those listed, in 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Appendix 1"); if it is, disability is presumed, and the claimant is considered unable to perform substantial gainful activity. *See McIntyre*, 758 F.3d at 150; *Rolon*, 994 F. Supp. 2d at 501; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). Fourth, if the impairment does not meet or equal the criteria of a listed impairment, the ALJ assesses whether the claimant retains functional capacity to perform his or her past work. *See McIntyre*, 758 F.3d at 150; *Rolon*, 994 F. Supp. 2d at 501; 20 C.F.R. §§ 404.1520(a)(4)(iv), (e)–(f). Fifth and finally, where a claimant is deemed unable to perform his or her past work, the ALJ "determine[s] whether there is other work within the national economy" that the claimant is qualified to perform. *See Peterson v. Barnhart*, 219 F. Supp. 2d 491, 493 (S.D.N.Y. 2002); 20 C.F.R. §§ 404.1520(a)(4)(v), (g) (noting that the ALJ must determine whether there are other jobs existing based on the claimant's vocational factors, which include age, education, and work experience, as well as the claimant's residual functional capacity). If the ALJ concludes that there is work in the national economy that the individual can perform, then the ALJ must determine that the individual is not disabled. *See McIntyre*, 758 F.3d at 150; 20 C.F.R. § 404.1520(a)(4)(v).[2]

---

[2] The claimant has the burden of proof for the first four steps, but the burden rests with the Commissioner at the fifth step—the determination on alternative work—if the analysis proceeds that far. *See McIntyre*, 758 F.3d at 150; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting that the Commissioner has the burden of proof at step five "only if the sequential evaluation process proceeds to the fifth step").

B. Analysis

The Court adopts the extensive recitation of facts set forth by Judge McCarthy in the R&R, (R&R 2–10, 13–14), and assumes the Parties' familiarity with it. The Court will repeat only those facts that are relevant to the consideration of Plaintiff's objections.

Plaintiff objects to Judge McCarthy's recommendation that Defendant's Cross-Motion be granted and that the case be dismissed. (*See id.* at 22.) First, Plaintiff argues that Judge McCarthy erred in determining that the ALJ properly applied the treating physician rule because (i) the treating physicians' opinions are uniformly supported; and (ii) Plaintiff's testimony does not conflict with the treating physicians' opinions. (Pl.'s Obj's to R&R ("Obj's") 4–8 (Dkt. No. 25).)[3] Second, Plaintiff contends that Judge McCarthy erroneously affirmed the ALJ's

---

[3] The treating physician rule, derived from 20 C.F.R. § 404.1527, "generally requires a measure of deference to the medical opinion of a claimant's treating physician." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Wright v. Barnhart*, 473 F. Supp. 2d 488, 493 (S.D.N.Y. 2007) ("Usually a treating physician's opinion deserves controlling weight."). However, a treating physician's opinion is "not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32; *see also Rivera v. Barnhart*, 423 F. Supp. 2d 271, 278 (S.D.N.Y. 2006) ("[T]he ALJ is required to give controlling weight to a treating physician's opinion on the nature and severity of a claimant's impairments when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." (internal quotation marks omitted)). Moreover, "a treating physician's statement that [a] claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Such a finding is "reserved to the Commissioner." *Id.* (quoting 20 C.F.R. § 404.1527(e)(1)); *see also Credle v. Astrue*, No. 10-CV-5624, 2012 WL 4174889, at *18 (E.D.N.Y. Sept. 19, 2012) ("[T]he ultimate determination that a claimant is 'disabled' or 'unable to work' is reserved to the Commissioner." (citing 20 C.F.R. § 404.1527(d))).

When declining to afford controlling weight to a treating physician's opinion, the ALJ must consider various factors to determine how much weight to give the opinion. 20 C.F.R. § 404.1527(c)(2). These factors are: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion was from a specialist; and (v) any other factors that "tend to support or contradict the opinion." *Id.*; *accord Cahill v. Colvin*, No. 12-CV-9445, 2014 WL 7392895, at *18 (S.D.N.Y. Dec. 29, 2014) (noting these "[k]ey factors that the ALJ must consider" (internal quotation marks omitted)). In addition, the ALJ

credibility assessment because the adverse side effects from his pain medications are well-supported. (*Id.* at 9–10.) Lastly, Plaintiff argues that Judge McCarthy failed to address his argument that he cannot perform the jobs identified by the vocational expert. (*Id.* at 11–12.)

### 1. The Treating Physician's Rule

In the R&R, Judge McCarthy determined that "the ALJ considered the appropriate factors," including "whether the treating physicians' opinions were supported or unsupported by the medical evidence in the record," in deciding to discount the opinions of Plaintiff's treating physicians. (R&R 17.) Most relevant here, Judge McCarthy's found that "substantial medical evidence"—namely, "the inconsistencies among the treating physicians' opinions and the record"—supports the decision of the ALJ not to give controlling weight to these opinions. (*Id.* at 18–19.)[4]

In response, Plaintiff contends that "the treatment notes" of these physicians "demonstrate consistent findings of limited muscle strength in the left shoulder coupled with a limitation in a range of motion." (Obj's 4.) Plaintiff also argues "that any potential conflict" between his testimony and the treating physicians' opinions "is, in fact, illusory." (*Id.* at 8.)

The Court finds Plaintiff's objections on this point to be without merit. It is well established that "[w]hen a treating physician's opinion is internally inconsistent or inconsistent with other substantial evidence in the record, the ALJ may give the treating physician's opinion less weight." *Illenberg v. Colvin*, No. 13-CV-9016, 2014 WL 6969550, at *20 (S.D.N.Y. Dec. 9, 2014); *see also Halloran*, 362 F.3d at 32 (holding that a treating physician's opinion may not be

---

must give "good reasons" for not according weight to the treating physician's opinion. *Halloran*, 362 F.3d at 32 (internal quotation marks omitted).

[4] Plaintiff's treating physicians include, among others, Dr. Marc Appel, Dr. Adam Carter, and Dr. Stephen Levinson. (*See* R&R 3–7; *cf.* Obj's 4–7.)

afforded controlling weight where it is not consistent with other substantial evidence in the record). Such is the case here.

For one, there are inconsistencies between the treatment notes of the various physicians and the "finding[s] of an extreme limitation, weakness, and pain [in] the dominant left arm." (Obj's 7.) Notable examples include: (a) in June 2011, Dr. Levinson found that Plaintiff retained "preserved and full" range of motion in his left shoulder, (Administrative Record ("A.R.") 1015 (Dkt. No. 5)); (b) in April 2011, Dr. Levinson noted that Plaintiff "has not lost any significant function" in his left shoulder, where "range of motion . . . is completely full throughout," (*id.* at 1017); (c) Dr. Carter noted that Plaintiff's left shoulder was intact neurovascularly as of March 2010, (*id.* at 805); (d) throughout 2006 and 2007 Dr. Appel repeatedly evaluated Plaintiff's shoulder muscle strength as "4/5," even while noting the limited range of motion, (*see, e.g., id.* at 204, 207, 218, 248); and (e) on various occasions in 2005, Dr. Appel noted that Plaintiff "can return to light work," (*see, e.g., id.* at 245, 247, 249).[5] Such findings are inconsistent with an opinion that Plaintiff was unable to perform even sedentary work. *See Shaffer v. Colvin*, No. 14-CV-745, 2015 WL 9307349, at *3 (W.D.N.Y. Dec. 21, 2015) (finding the ALJ correctly applied the treating physician rule in rejecting an opinion that "was inconsistent with [the treating physician's] own treatment notes"); *Montaldo v. Astrue*, No.

---

[5] Plaintiff asserts "there is no credible claim that [his] treating physicians consistently or collectively reported 'full 5/5' or 'good' muscle strength in the left upper extremity." (Obj's 7.) That, however, is not what Judge McCarthy determined (nor would such a determination be necessary to uphold the ALJ's decision here). Rather, the R&R points to such findings by Plaintiff's treating physicians as part of the "substantial medical evidence that supports the ALJ's decision" not to defer to their opinions. (R&R 18; *cf.* A.R. 387 (finding the opinions of Plaintiff's treating physicians "not consistent with the treatment and progress notes").) For example, Dr. Levinson reported in April 2011 that while Plaintiff was dealing with pain in his left shoulder, he maintained "full" "range of motion," and manual muscle testing was "5/5 throughout." (A.R. 1017.)

10-CV-6163, 2012 WL 893186, at *15 (S.D.N.Y. Mar. 15, 2012) (finding inconsistencies between a treating physician's responses to a questionnaire and her own evaluations of the claimant to be one of several "good reasons" not to give the opinion controlling weight).

Moreover, the ALJ did not rely on treatment notes alone in finding the treating physicians' opinions to be unpersuasive. (*See* A.R. 387–88.) As Judge McCarthy highlighted, Plaintiff's own testimony at the ALJ hearing contradicts the treating physicians' opinions that Plaintiff was totally disabled, as he "testified that he was able to manage his pain well with Vicodin and that he could lift 10 pounds with his left arm under medication." (R&R 19 (citing A.R. 413, 416); *cf.* A.R. 387.) In harping "on a mere 5 pounds discrepancy" as a "trivial" reason "to discount a treating physician's opinion," (Obj's 8), Plaintiff mischaracterizes the real conflict at issue. Both the ALJ and Judge McCarthy correctly note that Plaintiff's own testimony of "good pain management" directly contradicts the treating physicians' opinions that he "was totally disabled due to constant and extreme pain." (R&R 18–19; *see also* A.R. 387–88.) Indeed, while Plaintiff testified at the ALJ hearing that he does not really use his left arm, (A.R. 428), he also stated that he could lift 10 pounds with his left arm when taking Vicodin, (*id.* at 416; *see also* R&R 22 (discussing the inconsistencies in Plaintiff's testimony regarding the use of his left arm)). It is this contradiction, as opposed to "a mere 5 pounds discrepancy," that constitutes part of the substantial evidence supporting the ALJ's decision. *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (considering the "plaintiff's own testimony" as part of the "substantial evidence adequately supporting the [Commissioner's] conclusion").

Similarly in conflict with the treating physicians' opinions are the examination reports from the consulting physicians Plaintiff visited over the course of his disability benefits application. *See Snell*, 177 F.3d at 133 (finding the opinions of treating physicians not entitled to

8

controlling weight where "[t]he record contains evidence from several other doctors who examined [the claimant] and made less favorable findings"); *Manning v. Colvin*, No. 13-CV-497, 2014 WL 5308189, at *8–9 (W.D.N.Y. Oct. 16, 2014) (finding that the ALJ properly gave little weight to the treating physician's opinion and "great weight" to the consultative examiner's prognosis where the latter was more consistent with the medical evidence of record); *see also Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (summary order) (considering evaluations by a consultative examiner as part of the substantial evidence supporting an ALJ's decision not to give controlling weight to a treating physician's opinion). Dr. Justin Fernando, for example, noted the limited range of motion in Plaintiff's left shoulder but otherwise reported normal results, including muscle strength of 5/5 and that he "[n]eeded no help changing for the exam." (A.R. 282.) The examination reports of Dr. Suraj Mulhotra and Dr. Leena Philip reveal observations that similarly contravene the notion that Plaintiff cannot perform even sedentary work. (*See id.* at 879–80, 999–1000.)

Upon its own review of the record, the Court finds unavailing Plaintiff's contention that "the collective evidence uniformly supports the treating sources' finding[s]." (Obj's 7.)[6] To the contrary, the inconsistencies yield substantial evidence in support of the ALJ's decision not to

---

[6] It also bears noting the limited value of the standardized check-box forms, which are considered "only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran*, 362 F.3d at 31 n.2; *see also Llorens-Feliciano v. Astrue*, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Such form reports provide little reason to afford much weight to a treating physician's opinion. *See Philpot v. Colvin*, No. 12-CV-291, 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) (noting "[the treating physician's] opinion was largely a 'checklist' form" and concluding that "[t]he ALJ acted within her discretion in discounting the opinion on this basis"); *Cahill v. Astrue*, No. 11-CV-148, 2012 WL 3777072, at *7 (D. Vt. Aug. 29, 2012) (approving an ALJ's discounting of a treating physician's opinion where "[a] majority of the[] recommendations were boxes checked on a form").

give controlling weight to the opinions of Plaintiff's treating physicians. The Court accordingly deems that decision conclusive.

### 2. The ALJ's Credibility Assessment

Judge McCarthy also determined that "the ALJ's credibility assessment [of Plaintiff] is supported by substantial evidence." (R&R 22.) In reaching this conclusion, the R&R points to Plaintiff's inconsistent statements regarding the side effects of his pain medication and the lack of corroboration in the medical record to verify his claim that he requires two naps daily. (*Id.* at 21.) Plaintiff seems to argue that the ALJ did not consider his subjective "complaints of significant adverse side effects" in discounting Plaintiff's testimony. (Obj's 9.)[7]

As an initial matter, the Court notes that, in considering whether the ALJ gave Plaintiff's testimony the appropriate weight, an ALJ's credibility finding is entitled to deference. *See Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 538 (S.D.N.Y. 2015) ("It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." (alterations and internal quotation marks omitted) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983))); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Where, as here, an ALJ's findings are supported by substantial evidence, courts "must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human*

---

[7] Though lumped together with this specific objection, Plaintiff also takes issue with Judge McCarthy's supposed rejection of his "complaints that the adverse side effects of narcotic pain medication would interfere with his ability to sustain attention and concentration required for even basic work." (Obj's 9.) That, however, does not appropriately characterize the R&R's findings, (*see* R&R 22 (noting "[t]he ALJ also took Plaintiff's limited concentration . . . into account when assessing Plaintiff's residual functioning capacity" (citing A.R. 439))), and, moreover, does not present any sort of specific objection to trigger de novo review here.

10

*Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *see also Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (noting that "an ALJ's credibility determination is generally entitled to deference on appeal"). This Court adheres to that established principle here.

On one hand, Plaintiff contends that the ALJ's "decision fails to explain why [Plaintiff's] description of his side effects was not supported by the record or accurate based on a review of the entire record as required by 20 C.F.R. § 404.1529(c)." (Obj's 10.) The ALJ, however, was not obligated to explicitly reconcile each piece of evidence he considered in his decision as long as it is clear, as is the case here, that he weighed all the evidence of Plaintiff's symptoms, both subjective and objective. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that an ALJ need not "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability" where "the evidence of record permits [a reviewing court] to glean the rationale of an ALJ's decision"); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (deeming remand for further findings unnecessary when a reviewing court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence"); *accord Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) ("While it is not sufficient for the ALJ to make a single, conclusory statement that the claimant is not credible or simply to recite the relevant factors, remand is not required where the evidence of record permits us to glean the rationale of an ALJ's decision." (alterations, citation, and internal quotation marks omitted)); *Manning v. Astrue*, No. 11-CV-253, 2012 WL 4127643, at *6 (D. Vt. Aug. 17, 2012) (affirming an ALJ's decision to reject a witness's testimony where "the ALJ did not explicitly state that he rejected [her] testimony, or the reasons supporting that rejection," but "the ALJ's reasons for rejecting [the] testimony are

11

evident in the ALJ's decision, and are amply supported by the record"), *adopted by* 2012 WL 4127641 (D. Vt. Sept. 19, 2012).

In finding Plaintiff's "testimony at the hearing to be not fully credible," the ALJ provided a litany of claims by Plaintiff that were "simply not consistent with treatment notes" or with Plaintiff's own statements. (A.R. 387.) Among these, the ALJ pointed to Plaintiff's testimony that "the only side effect" of taking Vicodin is "some sleepiness." (*Id.*) The ALJ went on to highlight examples of these inconsistencies, (*see, e.g., id.* (indicating that Dr. Carter's "notes reflect that . . . the only side effects were some constipation")), which serve to provide "sufficient specificity" as to the basis for his assessment of Plaintiff's credibility, *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *see also Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) ("If the ALJ does find that a claimant's testimony is not credible, then the ALJ's determination must be set forth with sufficient specificity to permit intelligible plenary review of the record." (internal quotation marks omitted)). The Court, like Judge McCarthy, (*see* R&R 21), can readily recognize the inconsistencies that caused the ALJ to question Plaintiff's credibility.

The ALJ's reasons for discounting Plaintiff's testimony are not only evident in the decision itself but also amply supported by the record. Notwithstanding his objection to the contrary, (*see* Obj's 9–10 ("[Plaintiff's] specific and consistent complaints [were] that he would fall asleep and [that] he needed a 45 minute nap after taking the pain medication.")), Plaintiff's statements regarding the side effects of his pain medications are far from "consistent." Rather, as Judge McCarthy notes, "there is substantial evidence to rebut Plaintiff's claim that he requires two daily naps." (R&R 21.) While he did testify to that effect at one point during the ALJ hearing, (*see* A.R. 428), Plaintiff had previously stated that the Vicodin causes "[j]ust

12

sleepiness," requiring him to "take a little nap," (*id.* at 412–13). He further explained that "sometimes" he takes a nap "at nighttime." (*Id.* at 427.) Aside the internal inconsistencies in Plaintiff's testimony, substantial evidence in the medical record further supports the ALJ's finding on credibility. Even as reports from his treating physicians note his difficulty concentrating as a result of his pain medication, (*see, e.g., id.* at 314, 323), nowhere is there corroboration for his claim that he requires two naps per day, (*see id.* at 792–870, 969–96, 1011–50). Thus, Plaintiff's treating physicians corroborated *some* of "his complaints of adverse side effects," (*see* Obj's 10), but not the key complaint of sleepiness at issue here, (*see* A.R. 387).

Given the reasons outlined by the ALJ and the wealth of supportive evidence in the record, the Court finds the ALJ reasonably appraised Plaintiff's credibility.[8] Plaintiff's objection in this regard is therefore overruled.

### 3. The Vocational Expert's Identification of Jobs

Judge McCarthy recommended that the Court affirm the Commissioner's decision, (*see* R&R 1), which relied on the testimony of a vocational expert in finding Plaintiff "'not disabled,'" (A.R. 389 (crediting the vocational expert's testimony that Plaintiff could find employment in the national economy)).

Plaintiff counters that he cannot perform the job identified by the vocational expert. (Obj's 11.) In support of this objection, he asserts that "the treating physicians have collectively

---

[8] In assessing Plaintiff's credibility, the ALJ additionally recognized various inconsistencies among Plaintiff's statements regarding his pain and use of his left arm. (A.R. 386–87.) Despite "alleg[ing] disabling left shoulder and right knee pain," (*id.* at 387), Plaintiff reported symptom improvement with steroid injection treatment and narcotic pain medication, (*id.* at 178, 792–809, 970–79). He also testified at the ALJ hearing that he was able to control his pain with one dose of Vicodin daily. (*Id.* at 413, 427, 430.) These inconsistent statements augment the substantial evidence supporting the ALJ's finding that "[h]is testimony of intractable pain [was] not credible." (*See id.* at 387.)

13

and consistently opined that [Plaintiff] cannot use his dominant left arm for lifting and carrying throughout the work day . . . ." (*Id.*) Yet, as discussed above, that is simply not true. This Court has already noted the inconsistencies among the treating physicians' opinions and, in doing so, highlighted the more favorable prognoses as to Plaintiff's abilities. *See Snell*, 177 F.3d at 133.

Plaintiff also argues that "the evidence demonstrates that he is severely limited for reaching involving the left arm." (Obj's 11.) While this limitation is indeed documented in the record, (*see, e.g.*, A.R. 283–84), the vocational expert expressly confirmed that the identified jobs required "no more than occasional reaching overhead with the dominant extremity," (*id.* at 439). Clearly, the vocational expert did, in fact, address Plaintiff's functional limitations, notwithstanding Plaintiff's self-citing assertion to the contrary. (*See* Obj's 11 (claiming that "the testimony by the vocational expert fails to address these functional limitations" (citing Pl.'s Mem. of Law in Supp. of Mot. 28–30 (Dkt. No. 11))).) Moreover, in repeatedly referencing the Appeals Council's 2010 order to remand the case for further proceedings, Plaintiff largely oversells its value. The Appeals Council clarified Dr. Fernando's finding as a *severe limitation* for reaching, (*see* A.R. 455 (citing *id.* at 283–84)), but it by no means determined, let alone suggested, "that [Plaintiff] *cannot use* his dominant extremity," (Obj's 11 (emphasis added)).

Accordingly, the ALJ properly relied upon the testimony of the vocational expert in reaching a determination that this Court has confirmed to be well supported by the record. *See Pardee v. Astrue*, 631 F. Supp. 2d 200, 212 (N.D.N.Y. 2009) (rejecting as without merit the plaintiff's objection "that the jobs cited by the vocational expert demonstrate the need to use the upper extremity" where the court had found the residual functional capacity determination to be supported by substantial evidence (internal quotation marks omitted)). Plaintiff's final objection is thus overruled.

Because Plaintiff has offered no other specific objections, the Court, having carefully reviewed the R&R, concludes that Judge McCarthy committed no error, clear or otherwise.

## II. Conclusion

For the foregoing reasons, the Court adopts Judge McCarthy's R&R in its entirety, denies Plaintiff's Motions for Judgment on the Pleadings and for Attorney's Fees, and grants the Commissioner's Cross-Motion for Judgment on the Pleadings. The Clerk of the Court is respectfully directed to terminate the pending motions, (Dkt. Nos. 10, 15), enter judgment for Defendant, and close this case.

SO ORDERED.

DATED:   March 10, 2016
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE